ESTATE OF W. T. HALES, DECEASED, K. CAVETT AND FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, OKLAHOMA, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ONETA HALES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE A. HALES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. T. HALES, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93208, 93209, 93210, 93211.

Promulgated December 22, 1939.

1246

*Charles H. Garnett*, *Esq.*, for the petitioners.
*Stanley B. Anderson*, *Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies in income tax for the year 1935 as follows:

| | |
|---|---|
| Estate of W. T. Hales | $5,739.39 |
| Mrs. Oneta Hales | 566.53 |
| George A. Hales | 139.48 |
| W. T. Hales, Jr | 154.91 |

The questions presented for decision in each case are identical. They are: (1) Did the Commissioner erroneously include in income the accumulated dividends declared and credited on the stock of the Local Building & Loan Association where, pursuant to a plan of reorganization, and without physically withdrawing the accumulated dividends, the owner of the stock transferred it to the Local Federal Savings & Loan Association and received in exchange stock and cash of the latter in an amount equal to the paid-in cost of his Local Building & Loan Association shares, plus the dividends accumulated thereon?

(2) If the Commissioner did not err in (1), are the accumulated dividends taxable as gains upon the sale or exchange of capital assets or as ordinary income?

(3) Is the cash received from the Local Federal Savings & Loan Association, which is admitted to be income, taxable as a capital gain or as ordinary income?

The cases were consolidated for hearing and were submitted upon an agreed statement of facts, which is hereby adopted as the findings of fact.

The Local Building & Loan Association (hereinafter called Local Building) was a building and loan corporation originally organized in 1908 under the laws of the State of Oklahoma. The petitioners owned on July 9, 1935, certain unmatured installment and prepaid stock in Local Building upon which amounts had been paid in and dividends had been accumulated as hereinafter set forth. The stock of Local Building had been acquired by the petitioners at various times in the period 1923–1935.

The bylaws of Local Building authorized it to issue full-paid stock as well as installment and prepaid stock. Subscribers to the installment stock were to make monthly payments on the stock and each share was to mature when the monthly payments, plus dividends declared and credited thereon, less any fines or other legal charges against the stock, equaled $100. Subscribers to the prepaid stock were required to make a down payment of $50 per share and each share was to mature when the down payment, plus dividends declared and credited, less fines and charges, equaled the sum of $100. The shareholders were entitled to surrender their stock before maturity and receive the amounts paid in on the stock and the accumulated dividends, upon giving 30 days' notice. Holders of the installment and prepaid stock were not entitled to receive the accumulated dividends on such stock without at the same time surrendering their stock certificates and withdrawing the entire investment represented by the stock from the corporation. The bylaws of Local Building further provide as follows:

At no time, however, shall more than one-half of the receipts of the Association for any fiscal month, and when the Association is indebted on matured shares of any kind of stock, not more than one-third of said receipts to be applied to the demands of such withdrawing stockholders, without the consent of the Board of Directors. Full paid shares and all other shares shall be surrendered, cancelled and paid in order of the filing of notice of withdrawal or in the order of maturity.

Local Building began proceedings in 1934 to convert itself into a new corporation to be known as Local Federal Savings & Loan Association (hereinafter called Federal Savings) which was to be incorporated under the provisions of the Home Owners' Loan Act of 1933. A charter was granted to the Federal Savings on January 21, 1935. Local Building was converted into Federal Savings in conformity with the rules and regulations of the Home Loan Bank Board. The conversion was ratified by the stockholders of Local Building at a meeting held on January 26, 1935. Thereafter, Federal Savings acquired all of the assets and assumed all of the liabilities of Local Building.

The petitioners did not file any application to surrender their stock in Local Building at any time prior. If they had filed application to surrender their stock at any time after January 21, 1935, and prior to the exchange of the stock for Federal Savings, they would have received immediately the total book value of the stock, including the full amount of the dividends accumulated on the stock, in cash. Instead of exercising their right to turn in their shares and receive cash, the petitioners, on July 9, 1935, exchanged their stock in Local Building for full-paid stock and cash of Federal Savings. The amounts paid in and the dividends accumulated on the Local Building

stock owned by each petitioner as of July 9, 1935, and the amount of Federal Savings stock and cash received by each petitioner, was as follows:

| Petitioner | Local Building stock | | | Received from Federal Savings | |
|---|---|---|---|---|---|
| | Paid in cost | Accumulated dividends | Total | Stock | Cash |
| W. T. Hales | $46,704.07 | $14,097.87 | $60,801.94 | $60,000 | $801.94 |
| Oneta Hales | 6,000.00 | 4,208.44 | 10,208.44 | 10,000 | 208.44 |
| George A. Hales | 15,000.00 | 2,651.25 | 17,651.25 | 17,000 | 651.25 |
| W. T. Hales, Jr | 17,623.45 | 3,173.73 | 20,797.18 | 20,000 | 797.18 |

Each petitioner reported the cash received from Federal Savings as ordinary income in his or her income tax returns for 1935. No part of the accumulated dividends has ever been reported as income on any of the petitioners' returns for prior years. The record does not disclose the amount of dividends credited to the Local Building stock in either the taxable year or in any prior year.

The Commissioner, in his deficiency notices, held that the accumulated dividends were income for 1935, upon the theory that they were constructively received in that year. It has frequently been said that constructive receipt is to be sparingly applied and is not applicable unless the cash or its equivalent is unqualifiedly subject to the demand of the taxpayer. The petitioners, after January 21, 1935, and prior to the exchange of the shares of Local Building for the shares of Federal Savings, could have surrendered the shares of Local Building for cash. The respondent argues that during this period the cash was constructively received. However, the petitioners could have received the cash only by the surrender of the shares of Local Building, which would likewise have meant the surrender of their rights as holders of those shares to participate as stockholders in the new corporation, Federal Savings. They would have had to surrender their entire investment. This was a valuable right and forms a sufficient restriction to make inapplicable the doctrine of constructive receipt. Furthermore, it should be noted that the holders of the stock of Local Building could have obtained the amounts paid in on the stock and accumulated dividends by the surrender of their shares in prior years so that the doctrine of constructive receipt, if applicable at all, would go too far for the Commissioner's purpose.

The situation here is no different from that which has obtained in many other reorganization cases where stockholders not desiring to participate were given the option of turning in their shares for cash. Yet in none of those cases has it been suggested that the doctrine of constructive receipt applied under such circumstances so that a holder

of the stock would be taxable on a gain. The parties recognize that there was a reorganization in the present case, since Federal Savings acquired all of the property of Local Building. Sec. 112 (g), Revenue Act of 1934. The stockholders of Local Building, including these petitioners, exchanged their stock in that corporation for stock in Federal Savings, and the gain which they realized from that exchange is taxable only to the extent of the cash received. See sec. 112 (b) (3) and (c) (1). This is the contention of the petitioners. The respondent contends that the surrender of the Local Building shares is a separate transaction from the receipt of the Federal Savings shares. But the facts show that the entire transaction was a single one, entered into by the parties pursuant to the plan of reorganization. It must be treated as a single plan. *Wilbur F. Burns*, 30 B. T. A. 163; affd., 85 Fed. (2d) 8, under the title *Bassick* v. *Commissioner;* certiorari denied, 299 U. S. 592. Thus, as the petitioners concede, their gain is taxable only to the extent of the cash which they received.

The remaining question is, How is that gain taxable? Is it taxable as profit from the sale or exchange of a capital asset, as the petitioners contend, or is it taxable as ordinary income, as the respondent contends? The respondent says that the cash was a distribution to the stockholders of Local Building of its earnings and, since it is not subject to tax, its dividends are taxable as ordinary income. Secs. 101 (4) and 25 (a) (1), Revenue Act of 1934. The cash was not a dividend but merely an adjusting item. It was not declared or distributed as a dividend. It was not paid by Local Building but by Federal Savings. Therefore, we see no justification to tax the cash as the Commissioner urges.

*Decision will be entered under Rule 50.*